Sergeant Wilbur F. JUSTICE

v.

Carl C. DANBERG, Jr.,* in his official capacity as the Commissioner of Correction; Alan Machtinger, individually and in his official capacity as the Director of Human Resources of the Department of Correction; Department of Correction of the State of Delaware

Carl C. Danberg, Jr.; Alan Machtinger; Department of Correction of the State of Delaware, Appellants.

No. 08–3542.

United States Court of Appeals, Third Circuit.

Argued on July 13, 2009.

Filed: Aug. 17, 2009.

Mark P. Niedzielski, Esq., [ARGUED], Department of Justice, Wilmington, DE, for Appellants, Carl C. Danberg, Jr.; Alan Machtinger; Department of Correction of the State of Delaware.

Stephen J. Neuberger, Esq., [ARGUED], Thomas S. Neuberger, Esq., The Neuberger Firm, Wilmington, DE, for Appellee, Sergeant Wilbur F. Justice.

Before: RENDELL, FUENTES, and ROTH, Circuit Judges.

* (Pursuant to Fed. R.App. P. 43(c))

## OPINION OF THE COURT

RENDELL, Circuit Judge.

The plaintiff in this case, Sergeant Wilbur F. Justice, was a corrections officer with the Delaware Department of Correction ("DOC"). He alleges that the defendants (the DOC; Carl C. Danberg, Jr., in his official capacity as the Commissioner of Correction; and Alan Machtinger, individually and in his official capacity as the Director of Human Resources at the DOC) retaliated against him for his union activity by denying him a promotion. The District Court denied the defendants' motion for summary judgment and granted the plaintiff's partial motion for summary judgment as to whether Justice's conduct was protected by the First Amendment. We do not have jurisdiction over the District Court's order, and we will dismiss the appeal.[1]

## I. Background

Justice worked for the DOC for twenty-two years before retiring in 2007. He was also active in the correctional officer union, the Correctional Officers Association of Delaware ("COAD" or "Union"). During the time of the alleged retaliation, COAD was engaged in bitter contract negotiations with the DOC. The Union was also engaged in a negative advertising campaign against the incumbent governor and the State of Delaware which alleged "chronic under staffing . . . the need for salary increases . . . and security lapses within the prison system." (App.73.) As a COAD vice-president, Justice participated in the contract negotiations and COAD's activities. He alleges that Machtinger intentionally misplaced his application for promotion and that this was done in retaliation for his union affiliation. Because his application was misplaced, Justice says, he was not on the initial interview list and had little time to prepare for the interview. Justice came in second after the interviews and lost the promotion to a colleague he claims was less qualified. Machtinger, who was head of Human Resources at the DOC, contends that he was on vacation at the relevant time and had nothing to do with Justice's application.

Justice filed suit under 42 U.S.C. § 1983 in August of 2006. The case was initially assigned to Judge Jordan, but upon his appointment to this court the matter was reassigned. On February 4, 2008, at the close of discovery, the District Court issued an order directing the parties to submit short and concise statements of facts and legal issues rather than full summary judgment briefs. Justice submitted such a statement in support of his motion for partial summary judgment. The defendants submitted a concise statement but also filed full briefing and an appendix in support of their motion for summary judgment. Justice moved to strike the defense filings for non-compliance with the court's order, but the court denied the motion to strike and ordered that Justice should not file a brief in opposition or submit an appendix unless the court so ordered.

On July 29, 2008, the District Court issued an opinion and order granting Jus-

1. Justice retired from the DOC after filing this suit. The Eleventh Amendment bars suits against states and state officials, sued in their official capacities, when the relief sought is retroactive. *Edelman v. Jordan*, 415 U.S. 651, 668–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Justice concedes that his retirement moots his claims for prospective relief against the DOC and against Danberg and Machtinger in their official capacities, and that the remaining relief he seeks is retroactive. Appellee's Br. at 28. Therefore, the only remaining defendant is Machtinger, who was sued in his individual capacity as well as his official capacity. When the case returns to the District Court, it should dismiss the other defendants.

tice's motion for partial summary judgment, finding that he had engaged in constitutionally protected activity and suffered an adverse employment action, and denying the defendants' motion for summary judgment. It found that a "genuine issue of material fact remains as to whether plaintiff's activity was a substantial or motivating factor in the adverse action." (App.4.) The court did not rule on qualified immunity, despite the defendants' argument that, even if a constitutional violation and retaliation were proved, Machtinger was entitled to immunity from suit. The court disagreed, noting that qualified immunity required a two-step analysis: first, whether there was a constitutional violation, and second, whether the constitutional right that was violated was clearly established at the time of the violation. *See Curley v. Klem,* 499 F.3d 199, 206–07 (3d Cir.2007). It then stated its disposition: "[t]he court reserves judgment on the issue of qualified immunity until such time as an actual constitutional violation has been identified." (App.22.)

## II. Jurisdiction

A denial of a motion for summary judgment is not usually a final order, but a denial of summary judgment on the basis of qualified immunity can be an appealable order under the collateral order doctrine. *See Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Rivas v. City of Passaic,* 365 F.3d 181, 192 (3d Cir.2004). However, such an order is appealable only if it presents an issue of law.[2]

As the Supreme Court explained in *Johnson,* the collateral order doctrine does not permit an appeal from an order denying a motion for summary judgment "insofar as that order determines whether or not the pretrial record sets forth a 'genuine issue' of fact for trial." 515 U.S. at 320, 115 S.Ct. 2151. "With respect to facts, 'we may review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right, but we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove.'" *Reilly v. City of Atl. City,* 532 F.3d 216, 224 (3d Cir.2008) (quoting *Forbes v. Twp. of Lower Merion,* 313 F.3d 144, 147 (3d Cir.2002)).

Justice argues that we lack jurisdiction over the issue of qualified immunity because the District Court determined that a genuine issue of material fact remained as to whether his activity was a substantial or motivating factor in his failure to get a promotion. The defendants argue that we do have jurisdiction; they contend they are challenging only the pure legal issue of whether Justice's union activity was protected by "clearly established law." (Appellant's Supp. Br. at 2.)

We conclude that we lack jurisdiction over the appeal from the District Court's order denying summary judgment.[3] The court did not deny summary judgment based on its analysis of qualified immunity; rather, it stated it was denying summary judgment because it could not yet deter-

---

**2.** We exercise plenary review over questions of law appealed pursuant to the collateral order doctrine. *Schieber v. City of Phila.,* 320 F.3d 409, 415 (3d Cir.2003). In reviewing a denial of summary judgment, we view the facts in the light most favorable to the non-

moving party, the appellee. *See, e.g., Barton v. Curtis,* 497 F.3d 331, 334 (3d Cir.2007).

**3.** Because we hold that we do not have jurisdiction over the denial of summary judgment, we will not address the grant of partial summary judgment.

mine whether there had been a constitutional violation and thus could not decide the first prong of the qualified immunity analysis.[4] Indeed, the court said specifically that it "reserve[d] judgment on the issue of qualified immunity until such time as an actual constitutional violation has been identified." (App.22.)

We cannot determine from the District Court's opinion or order whether it believed there were factual issues related to the causation of the adverse employment action (in which case we do not have jurisdiction because only issues of law are appealable from orders denying qualified immunity at the summary judgment stage), or whether it was deferring its qualified immunity decision because the record before it—with full briefing from the defendants but only the concise statement of facts and no appendix from Justice—was insufficient (in which case we do not have jurisdiction because it was not prepared to decide the qualified immunity issue). Either way, the District Court's order is unreviewable.

We note that the purpose of qualified immunity is to protect officials from suit, not just from trial. *See, e.g., Johnson,* 515 U.S. at 312, 115 S.Ct. 2151 (noting that "qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct"); *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("[W]e repeatedly

have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."). A district court is charged with deciding " 'whether a constitutional right would have been violated on the facts alleged. . . .' " *Doe v. Groody,* 361 F.3d 232, 237 (3d Cir.2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). In this case, the unorthodox briefing, with only the concise statement of facts and no record evidence from the plaintiff, may have made it impossible for the District Court to rule based on what was before it. If the District Court did believe that the record was insufficient (rather than that there were fact issues to be decided at trial), we encourage the District Court to proceed to full briefing so as to be able to decide the qualified immunity issue prior to trial.

For the reasons set forth above, we will DISMISS the appeal for lack of jurisdiction.

---

**4.** The Supreme Court, in *Pearson v. Callahan,* —— U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), held that the two-step *Saucier* analysis is no longer mandatory and that courts need not first determine whether the facts alleged by the plaintiff make out a violation of a constitutional right. Rather, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. If a court first determines that the right at issue was not clearly established at the time of the offense, it need not explore the factual support for the plaintiff's allegations of a constitutional violation, and may grant qualified immunity. We do not know whether *Pearson* will have an impact on this case, but it is worth noting the new post-*Saucier* flexibility in qualified immunity analysis.